UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-cv-20379-KMM

BANKUNITED, INC.,

    Plaintiff,

v.

UNITED STATES OF AMERICA

    Defendant.
_____/

**ORDER**

THIS CAUSE came before the Court upon Defendant United States of America's ("Defendant" or the "Government") Motion for Summary Judgment, ("Mot." or "Motion") (ECF No. 64), and Plaintiff BankUnited, Inc.'s ("Plaintiff" or "BUI") Motion for Partial Summary Judgment. ("Cross Mot." or "Cross Motion") (ECF No. 67). Plaintiff responded to Defendant's Motion, ("Resp.") (ECF No. 72), and Defendant replied. ("Reply") (ECF No. 79). Defendant also responded to Plaintiff's Cross Motion, ("Cross Resp.") (ECF No. 75), and Plaintiff replied. ("Cross Reply") (ECF No. 77). The Motions are now ripe for review. As discussed below, Defendant's Motion for Summary Judgment is GRANTED.

**I.   BACKGROUND**[1]

"In this case, Plaintiff is seeking a tax refund for a loss claimed in connection with Plaintiff's 2009 acquisition of a failed bank." Resp. at 1 (cleaned up). In May 2009, BankUnited

---

[1] The facts herein are taken from the Complaint (ECF No. 1) ("Compl"), the Parties' Stipulation of Facts ("Stip.") (ECF No. 54), the Parties' Stipulated Authentic Exhibits ("Stip. Ex. #"), Defendant's Statement of Material Facts ("DSMF") (ECF No. 64-1), Plaintiff's Response to Defendant's Statement of Material Facts ("R.DSMF") (ECF No. 70), and a review of the corresponding record citations and exhibits, exclusive of any legal argument or conclusions.

F.S.B. (the "Failed Bank") failed and was placed into Federal Deposit Insurance Corporation ("FDIC") receivership. Stip. ¶¶ 25–28. In May 2009, BUI acquired the Failed Bank. *Id.* The assets BUI acquired included "cash, investment securities, a portfolio of loans secured by residential and commercial real estate, other real estate owned properties, and stock in [a subsidiary real estate investment trust titled] BU REIT." *Id.* ¶ 29. As part of the acquisition, BUI "assumed certain liabilities of [the Failed Bank] in the amount of $12,766,043,000." *Id.* ¶ 30. As part of the acquisition, BUI and the FDIC "entered into two loss-sharing agreements, one covering certain residential loans and the other covering certain commercial loans." *Id.* ¶ 32. At the time, BUI REIT held a portfolio of loans. *Id.* ¶ 29. The BU REIT stock acquired during the acquisition was held by BU Delaware. Inc., "which was a wholly-owned consolidated subsidiary of [the Failed Bank] and became a wholly-owned consolidated subsidiary" of BUI after the acquisition. *Id.* ¶ 36.

In reporting the acquisition for tax purposes, BUI was required to categorize the assets acquired into "into seven 'classes' in order of liquidity under Treasury Regulation §§ 1.597-5(c) and 1.338-6(b), (c)(1) and (2)." *Id.* ¶ 42. In its reporting, BUI classified "residential and commercial real estate loans that it directly acquired" as Class II assets. *Id.* BUI also treated the loans held by BUI REIT as Class II assets for the "purposes of computing and reporting income under § 1.597-5(d)(2)(iii)," *id.* ¶ 43, "even though those loans were not owned by BUI or one of its controlled subsidiaries." DSMF ¶ 1; R.DSMF ¶ 1. At the time of the acquisition, "the unpaid principal balance of the BU REIT Loans was $2,172,223,653" and BUI "determined that the fair market value of the BU REIT Loans was $1,946,945,094." Stip. ¶ 47. BUI included $1,946,945,094 (the "Section 507 Basis") under Class II assets acquired. *Id.* "If BUI had not included the fair market value of the BU REIT Loans ($1.947 billion) in its Class II assets,

BankUnited's purchase price of $12.766 billion would have been greater than the fair market value of the Class I and Class II assets it acquired." *Id.* ¶ 51. When a bank's purchase price exceeds the fair market value of the Class I and Class II assets it acquires, the bank is not required to recognize any income under [I.R.C.] § 597." *Id.* Nevertheless, when BUI acquired the Failed Bank "it acquired the stock of BU REIT, not its assets." DSMF ¶ 6; *see also* R.DSMF ¶ 6. On November 30, 2011, BU REIT was liquidated in a tax-free transaction under I.R.C. § 332. Stip. ¶ 6. Following the liquidation, BUI "continued to account for BUI REIT's assets and liabilities, including any tax attributes (such as built-in losses) in the same manner BUI REIT had." DSMF ¶ 19; *see also* R.DSMF ¶ 19.

"In 2015, the [Internal Revenue Service ("IRS")] selected BUI's 2013 income tax return for examination." DSMF ¶ 20; *see also* R.DSMF ¶ 20. The audit was later expanded to include 2014 as well. *Id.* In August 2016, Plaintiff "timely filed a claim for refund for 2012: an amended consolidated income tax return that removed the income it reported as '§ 597 Gain' for that year." Stip. Ex. 13; *see also* Stip. ¶ 61. Plaintiff's refund request was a letter BUI sent to the IRS stating if "the IRS concludes that the position originally taken by [BUI] does not involve a method of accounting, but, instead, a series of *errors*, [BUI] would like to stake its claim to the refunds attributable to the portion of the previously recognized section 597 gain in 2012." Stip. Ex. 13 at 1. "The IRS allowed BUI's claim for refund for 2012 and made an adjustment for 2013 and 2014 to remove the Section 597 income." Stip. ¶ 63. Accordingly, the IRS issued BUI the following tax refunds (exclusive of interest): (1) 2012: $98, 757,945, (2) $90,797,282, and (3) $100,075,327. *Id.* ¶ 63. "By December 2015, the statute of limitations for claiming a refund had expired for BUI's 2009, 2010 and 2011 tax periods, so the IRS did not issue a refund." *Id.* ¶ 64.

In 2019, in BUI's Form 1120X, *Amended U.S. Corporate Income Tax Return,* BUI claimed

3

it had "$1,104,002,623 in what it called an independent capitalized asset." DSMF ¶ 26; *see also* R.DSMF ¶ 26. BUI determined the value of its "independent capitalized asset" by subtracting "the amount of section 597 gain previously refunded for tax years 2012, 2013, and 2014" from the value of the BUI REIT loans it had classified as Class II assets. DSMF ¶ 27; *see also* R.DSMF ¶ 27. In March 2022, Plaintiff "filed an administrative refund claim to recover $39,797,526 of federal income tax paid for the 2019 tax year[.]" *Id.* ¶ 66. Plaintiff's 2019 refund claim was based on two alternative theories. *Id.* "A deduction of $1,104,002,623 titled 'Loss on 597 Asset' under I.R.C. § 165" or, in the alternative, "that the Section 597 Basis may be classified as a premium paid with respect to the BUFSB and BU REIT loans (the "Section 597 Basis Premium") that should be amortizable over a 15-year period pursuant to 26 C.F.R. § 1.167(a)-3. *Id.* ¶ 67. Plaintiff has not received any funds in connection with its 2019 refund claim. *Id.* ¶ 68. Defendant disputes that Plaintiff overpaid its federal income tax for 2019. *Id.* ¶ 69.

On January 30, 2023, Plaintiff initiated the instant lawsuit, asserting entitlement to the recovery of $39,797,526 in federal income taxes, plus overpayment interest on the amounts to be refunded, as allowed by law. Compl. ¶¶ 50–56. Plaintiff argues that the "Section 597 Basis existed only because of the benefit provided to BankUnited by the FDIC Loss Guarantees[,]" thus, the associated benefit ended on February 13, 2019, when "the associated FDIC Loss Guarantees were terminated and the FDIC had ceased financially compensating [BUI] pursuant to those agreements." Compl. ¶ 55. Alternatively, Plaintiff asserts that "the Section 597 Basis should be classified as a premium paid with respect to the [Failed Bank] and BUI REIT Loans." *Id.* ¶ 58. Now before the Court is Defendant's Motion for Summary Judgment and Plaintiff's Partial Motion for Summary Judgment.

## II.     LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56). A genuine issue of material fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted). Speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In assessing whether the moving party has met this burden, a court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001).

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to present evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Rule 56(e). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted). But if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

**III.   DISCUSSION**

Before reaching the merits of this case, this Court must first determine whether it has subject matter jurisdiction. *See e.g., Vintilla v. United States*, 931 F.2d 1444, 1446–47 (11th Cir. 1991). In its Motion, Defendant asserted two arguments relating to this Court's jurisdiction: (1) that the statute of limitations on Plaintiff's claim has expired and (2) that the duty of consistency bars Plaintiff from bringing this action. Consequently, this Court shall address Defendant's arguments before considering the merits.

### A. Statute of Limitations

"Under well-settled principles of sovereign immunity, the United States is immune from suit unless it consents to be sued." *Mut. Assur., Inc. v. United States*, 56 F.3d 1353, 1355 (11th Cir. 1995) (citing *United States v. Dalm*, 494 U.S. 596, 608 (1990)). The United States has waived its sovereign immunity to allow taxpayers to file actions seeking tax refunds. *See Mut. Assur.*, 56 F.3d at 1355 (citing 28 U.S.C. § 1346(a)(1)). Nevertheless, courts have routinely held that filing a timely administrative refund claim is a "jurisdictional prerequisite to the maintenance of a tax refund suit." *See Mut. Assur.*, 56 F.3d at 1355 (citing *Dalm*, 494 U.S. at 602) (collecting cases). Consequently, a taxpayer must file "an administrative claim for refund with the IRS 'within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later[.]" *Id.* (citing I.R.C. § 6511(a)). "A taxpayer who fails to file an administrative claim for refund within the period set forth in I.R.C. § 6511(a) is barred from filing a refund suit in the district courts." *Id.*

Moreover, the Eleventh Circuit has held that "'general principles of equity may not override statutory requirements for timely filing of tax refund claims.'" *Vintilla v. United States*, 931 F.2d 1444, 1446 (11th Cir. 1991) (quoting *Republic Petroleum Corp. v. United States*, 613 F.2d 518, 527 (5th Cir.1980)). "Unlike general statutes of limitation which govern independently

6

existing causes of action between private parties, the timeliness requirement at issue here is not procedural, or remedial, but jurisdictional." *Vintilla*, 931 F.2d at 1446 (quotations omitted) (cleaned up). Thus, claims for erroneously paid taxes are not entitled to equitable tolling. *See United States v. Brockamp*, 519 U.S. 347, 354 (1997) ("Congress did not intend the "equitable tolling" doctrine to apply to § 6511's time limitations."). Moreover, even when a taxpayer only learns of the erroneously paid taxes after the statute of limitations period has run, their claim is still deemed untimely. *See id.* at 353. Once the statute of limitations period for a given tax year has expired, the court is without jurisdiction to adjudicate the merits. *See Enax v. Comm'r*, 476 F. App'x 857, 860 (11th Cir. 2012) (vacating and remanding for lack of subject matter jurisdiction); *see also Dantzler v. U.S. I.R.S.*, 183 F.3d 1247, 1252 (11th Cir. 1999) (reversing denial of summary judgment where taxpayers claim was untimely). This is true "regardless of whether the tax is alleged to have been erroneously, illegally, or wrongfully collected[.]" *Dalm*, 494 U.S. at 602 (quotations omitted).

In its Motion, the Government argues "BUI's arguments are simply an attempt to circumvent the refund statute of limitations for 2009, 2010, and 2011." Mot. at 25. Put simply, the Government argues that because the claim period for a tax refund had previously lapsed, Plaintiff is seeking a tax deduction for overpaid taxes, rather than a refund, but the requested relief is still the same—a refund of overpaid taxes in 2009–2011. *Id.* In response, Plaintiff argues:

> BUI did not learn of the IRS's position regarding the Deemed Ownership position (or the possibility of a tax refund for taxes paid on Section 597 Gain) until 2015, and the statute of limitations had run for 2009 to 2011 by the time the BUI had the chance to discuss the issue with the IRS in December 2015. But that fact does not matter here. BUI is asking for—and entitled to—a refund in 2019, a year for which the statute of limitations for seeking a refund is undisputedly still open.

Resp. at 25. Plaintiff concedes, however, it is "seeking a tax refund for a loss claims in connection with [Plaintiff's] 2009 acquisition of [the] Failed Bank." *Id.* at 1. Moreover, Plaintiff

7

acknowledges that its refund request stems from its classification of the Failed Bank for tax years 2009, 2010, and 2011. Cross Mot. at 18. Plaintiff has also stipulated that the statute of limitations for those year lapsed in December 2015. Stip. ¶ 64. Relatedly, the SEC's audit of Plaintiff had no impact on the statute of limitations because tax refund claims are not entitled to equitable tolling. *See BCS Fin. Corp. v. United States*, 118 F.3d 522, 526 (7th Cir. 1997) (Plaintiff "could, however, have requested, and would certainly have received, an extension of the statute of limitations . . . A large business firm represented by sophisticated lawyers and accountants, BCS should have had no difficulty filing a timely claim.").

Plaintiff's argument, that this Court has jurisdiction because the statute of limitations has not run for tax year 2019, is without merit. Plaintiff requests a tax deduction in 2019 to reflect expenses paid stemming from overpaid taxes in 2009, 2010, and 2011. *See generally* Compl. Granting Plaintiff relief in this case, would require this Court to disregard well-settled law that precludes untimely tax refund claims. Plaintiff cannot merely deduct overpaid taxes once the statute of limitations has run to circumvent 26 U.S.C. § 6511's timeliness requirements. Under Plaintiff's interpretation of 26 U.S.C. § 6511, any taxpayer could simply deduct overpaid taxes after the statute of limitations has expired—rendering the statute's timeliness provisions ineffective. Consequently, this Court cannot adopt Plaintiff's interpretation, and finds it is without jurisdiction to adjudicate the merits of this case.

    **B.**    **Duty of Consistency**

Even if the statute of limitations had not run, Plaintiff is estopped from asserting its claims under the duty of consistency. "The duty of consistency applies when there is: '(1) a representation or report by the taxpayer; (2) on which the Commission has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to

8

recharacterize the situation in such a way as to harm the Commissioner.'" *Kielmar v. Comm'r*, 884 F.2d 959, 965 (7th Cir. 1989) (quoting *Herrington v. Comm'r*, 854 F.2d 755, 758 (5th Cir.1988)); *see also Shook v. United States*, 713 F.2d 662, 666–67 (11th Cir. 1983) (discussing the duty of consistency). "If this test is met, the Commissioner may act as if the previous representation, on which he relied, continued to be true, even if it is not. The taxpayer is estopped to assert the contrary." *See Janis v. Comm'r of Internal Revenue*, 461 F.3d 1080, 1085 (9th Cir. 2006).

Here, the Parties stipulated that in "August 2016, BUI timely filed a claim for refund for 2012." Stip. ¶ 61; Stip. Ex. 13. Prior to the conclusion of the statutory period for the 2012 tax year, BUI sent a letter to the IRS which acknowledged that the statutory period for the 2012 tax year was set to expire in September 2016. Stip. Ex. 13. The letter referenced "a letter submitted to Bert Levin" where the Taxpayer "reiterated that the $1,946,945,094 of 'phantom' basis [BUI] assigned to the captive REIT's loans may be viewed as giving rise to an improper method of accounting or series of errors and that the Taxpayer would await guidance from the IRS before proceedings with the filing of any claims for refund." *Id.* The letter also stated, "Taxpayer has requested the IRS determine whether the Taxpayer is entitled to a correction for its previous treatment of the captive REIT's loans and whether this correction would be made under the accounting method change procedures or by way of amending prior year tax returns." *Id.* After receiving this request, the IRS found BUI incorrectly classified the BUI REIT as a Class II asset and issued BUI $289,630,554 (exclusive of interest) for tax years 2012, 2013, and 2014, collectively. Stip. ¶ 63. The IRS did not, however, issue refunds for 2009, 2010, or 2011, as the statutory period had lapsed.

BUI now argues that its "receipt of refunds was not an admission that it misread the 2012

to 2014 regulations;" rather, "BUI simply accepted the money that the IRS believed was not owed under its view of the law." Resp. at 25. Plaintiff further argues that Defendant's construction of the duty of consistency puts Plaintiff in an impossible position to either "accept a refund of only the last three years of tax payments and forego the first three years of those payments" or "stand on principle and refuse the offered refund with the risk of the IRS disputing BUI's deduction for the entire Section 597 Basis when it ultimately triggered a tax loss." Resp. at 26. This Court is unconvinced that Plaintiff was placed in an "impossible" position, when BUI's letter to the IRS requests that the IRS "determine whether [BUI] is entitled to a correction." Stip. Ex. 13; *see also* Resp. at 25 ("Defendant's "duty of consistency" theory illustrates a fundamental issue in this case: the government has continually placed BUI in an *impossible* position over the last decade.")

As Defendant notes, BUI did not "'simply accept' an unsolicited $289,630,000 (plus interest) from the IRS, BUI affirmatively asserted it was due the refund." Reply at 14 (citing Resp. at 25). While the Complaint argues that Plaintiff "strictly followed" the § 597 Regulations, Plaintiff's admission that "its reporting of Section 597 income from its 2013 and 2014 taxes could be regarded as a 'series of errors'" and refund request to the IRS flatly contradicts its current assertion. *See* Reply at 14 (citing (ECF No 53–13 at 1). Nevertheless, even if Plaintiff did, in fact, follow the § 597 Regulations, it is estopped from arguing otherwise in this action under the duty of consistency. *See Shook*, 713 F.2d at 666–67.

Moreover, as Plaintiff acknowledged in its refund request, Stip. Ex. 13, and stipulated to in this case, refund relief for tax years 2009, 2010, and 2011 have lapsed. Stip. ¶ 63. In granting BUI $289,630,000 in relief, the IRS relied on the assertions in Plaintiff's letter, including that its reporting could be regarded as a "series of errors" and that recovery for losses incurred pertaining to the § 597 Basis are subject to the three-year statute of limitations. Stip. Ex. 13. Consequently,

after the IRS permitted Plaintiff to amend and granted $289,630,000 in relief, Plaintiff is barred from arguing it did comply with the relevant tax provisions, and is entitled to a deduction in overpaid taxes as a business expense relating to the BU REIT loans.

### IV.     CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (ECF No. 64) is GRANTED. Pursuant to Federal Rule of Civil Procedure 58, final judgment shall be entered by separate order. The Clerk of Court is INSTRUCTED to CLOSE this case. All pending motions, if any, are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this __7th__ day of January 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c:  All counsel of record